WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aviva USA Corporation, an Iowa corporation; and Aviva Brands Limited, a United Kingdom limited company,<br><br>    Plaintiffs,<br><br>vs.<br><br>Anil Vazirani, an individual; Vazirani & Associates Financial, LLC, an Arizona limited liability company; Secured Financial Solutions, LLC, an Arizona limited liability company; James Regan, an individual; and Regan & Associates, LLC, an Arizona Limited liability Company<br><br>    Defendants.<br><br>Anil Vazirani, an individual; Vazirani & Associates Financial, LLC, an Arizona limited liability company; and Secured Financial Solutions, LLC, an Arizona limited liability company,<br><br>    Counterclaimants,<br><br>Aviva USA Corporation, an Iowa corporation; and Aviva Brands Limited, a United Kingdom limited company,<br><br>    Counterdefendants. | No. CV 11-0369-PHX-JAT<br><br>**ORDER** |

    Pending before the Court are: (1) Plaintiffs' Motion to Dismiss Vazirani Defendants' Counterclaims for Failure to State a Claim Upon Which Relief Can be Granted (Doc. 53),

(2) Plaintiffs' Motion for Entry of Partial Final Judgment on Liability as Sanctions for Spoliation of Evidence (Doc. 66), and (3) Defendant James Regan's Motion for Sanctions for Discovery Abuse (Doc. 73). The Court now rules on these Motions.

## I. BACKGROUND

Plaintiffs Aviva USA Corporation and Aviva Brands Limited (collectively "Aviva") filed an Amended Complaint (Doc. 42) against Defendants Anil Vazirani, Vazirani & Associates Financial LLC, Secured Financial Solutions, LLC (collectively the "Vazirani Defendants"), James Regan, and Regan and Associates, LLC (collectively the "Regan Defendants") on June 14, 2011.

Plaintiff Aviva USA is an Iowa Corporation that serves customers in the life insurance and annuity sector. (Doc. 42 at 4, ¶ 7). Defendant Vazirani has two limited liability corporations: Vazirani & Associates, LLC and Secured Financial Solutions, LLC, an independent marketing organization that contracts with insurance companies to perform distribution and other marketing functions for one or more of the insurance companies' products or product lines. (Doc. 75 at 4). From approximately 2005 to January 2009, Defendant Vazirani and his companies worked as agents of Aviva, marketing Aviva's life insurance and annuity products. (*Id.*). Defendant Regan worked with Defendant Vazirani and his company, Defendant Secured Financial Solutions, LLC, and also worked as an agent marketing Aviva's life insurance and annuity products. (Doc. 73 at 3).

In January 2009, Aviva terminated its contract with Defendants Regan, Vazirani and Secured Financial Solutions, LLC. (Doc. 75 at 4-5). Thereafter, Defendant Vazirani initiated lawsuits against Aviva's executive vice-president, a former Aviva executive, and an Aviva subsidiary relating to this termination. (Doc. 66 at 5).

### A. The Amended Complaint

Plaintiffs allege that, in July 2010, Defendant Vazirani's lawyer emailed Aviva claiming that Defendants would hire a public relations firm to launch an internet smear

1  campaign if Aviva did not pay Defendant Vazirani off. (Doc. 42 at 7, ¶ 20).[1] Plaintiffs
2  allege that when Aviva did not pay, Defendants hired Eric Starkman and his public relations
3  firm, Starkman & Associates, Inc., to develop a commercial website that infringed Aviva's
4  trademark and trade dress rights and disparaged Aviva. (*Id.* at ¶ 21). Plaintiffs allege that
5  Defendants then made the website available to the public at various domain names, including
6  insideaviva.com, aviva-exposed.com, avivauncovered.com, and aviva-uncovered.com. (*Id.*
7  at 8, ¶ 31).

8  Plaintiffs allege that these websites create a likelihood of confusion with Aviva's
9  marks and trade dress, inflict commercial harm on Aviva, and unjustly capitalize on the
10 goodwill associated with the Aviva mark and Aviva's protectable trade dress and other
11 trademark rights. (*Id.* at 8-9, ¶¶ 35, 36). Plaintiffs allege that Defendants' websites contain
12 an identical design of Aviva's AVIVA mark. (*Id.* at 15, ¶ 75). Plaintiffs allege that
13 Defendants use the AVIVA mark in close connection with advertising their products and
14 services in competition with Aviva (*Id.* at ¶ 76). Plaintiffs allege that Defendants copied
15 Aviva's Trade Dress by using: (1) a yellow, blue, and green color scheme; (2) the appearance
16 of a ray of light emanating from the yellow background; and (3) a blue, serif, all capitals font
17 for the AVIVA mark in close connection with the advertising of Defendants' products and
18 services. (*Id.* at 15-16, ¶ 78).

19 Plaintiffs further allege that Defendants impersonated an officer of Creative Marketing
20 International Corporation, an Aviva affiliate, and electronically submitted false and
21 fraudulent information corresponding to that officer's identity to register certain domain

---

[1] The email at issue states, "In light of Mr. Tripses' threat, we plan to send a letter to all of the insurance carriers that Mr. Vazirani does business with that includes various non-confidential disclosure documents that demonstrate that it is not Mr. Vazirani who has engaged in misconduct, but these defendants. We have also retained a PR firm to publicize the injustices suffered by Mr. Vazirani at the hands of your clients and Aviva. Prior to taking these actions, we wanted to give your clients the opportunity to discuss a fair and equitable settlement with Mr. Vazirani and/or to participate in an early mediation. If we don't hear from you by close of business Monday, August 3, 2010, we will be left with no choice but to take the actions outlined above." (Doc. 66, Exhibit 13).

1 names. (*Id.* at 9, ¶ 39). Plaintiffs allege that Defendants launched a campaign of "blast
2 emails," directed at Aviva's agents, potential agents, and consumers, which disparaged
3 Aviva. (*Id.* at 11, ¶ 56). Plaintiffs allege that, in an attempt to hide their misconduct,
4 Defendants failed to preserve evidence and removed aspects of Aviva's trade dress from one
5 of the websites. (*Id.* at 11, ¶ 58).

6 Plaintiffs allege that after the lawsuit was filed, Defendants began ten new websites
7 and registered these domain names with foreign registrars to evade the jurisdiction of the
8 U.S. Courts. (*Id.* at 12, ¶ 59). Plaintiffs allege that these fraudulently registered domain
9 names include aviva-lawsuit.com, aviva-problems.com, aviva-litigation.com,
10 avivacomplaints.com, avivaplcsucks.com, avivasucksusa.com, anilvsaviva.com,
11 anilvaziranivsaviva.com, avivavsanil.com, and avivavsanilvazirani.com. (*Id.* at 10, 21, ¶¶
12 110, 118).

13 Based on the above facts,[2] Plaintiffs allege that Defendants have (1) engaged in
14 trademark infringement in violation of section 32 of the Lanham Act, 15 U.S.C. § 1114
15 (Count One) (Doc. 42 at 18-19, ¶¶ 90-98); (2) engaged in trademark infringement, trade dress
16 infringement, and unfair competition in violation of section 43 of the Lanham Act, 15 U.S.C.
17 §1125(a) (Count Two) (*Id.* at 19-21, ¶¶ 99-108); (3) engaged in Federal Cyberpiracy and
18 violated § 43(D) of the Lanham Act, Anti-Cybersquatting Protection Act, 15 U.S.C. §
19 1125(d) (Count Three) (*Id.* at 21-22, ¶¶ 109-124); (4) engaged in unfair competition in
20 violation of Arizona common law (Count Four) (*Id.* at 22-23, ¶¶ 125-133); (5) engaged in
21 Federal Racketeering prohibited by 18 U.S.C. § 1964 (Count Five) (*Id.* at 24-25, ¶¶ 134-
22 142), and (6) Violated Arizona Revised Statutes section 13-2301, *et seq.*(Organized Crime,
23 Fraud, and Terrorism) (Count Six) (*Id.* at 25-27, ¶¶ 143-154).[3]

---

[2] The Court notes that its summary of facts in not intended to be all-inclusive and is not intended to limit Plaintiffs' allegations in any way.

[3] The Court notes that, in their prayer for relief, Plaintiffs request "a temporary restraining order, preliminary, and then permanent injunction." (Doc. 42 at 27, ¶ 1). If Plaintiffs seek *immediate* relief, Plaintiffs must file a separate motion for injunctive relief.

1    In their Answer and Counterclaim to Plaintiffs' Amended Complaint (Doc. 50), the
2 Vazirani Defendants asserted affirmative defenses and counterclaims. The counterclaims
3 are: (1) Non-Infringement of § 32 of the Lanham Act, 15 U.S.C. § 1114 (Count One) (*Id.* at
4 10, ¶¶ 8-12); (2) Non-Infringement of Alleged Trade Dress Rights and Unfair Competition
5 (Count Two) (*Id.* at 11, ¶¶ 13-17); and (3) Lack of Federal Cyberpiracy, Violations of § 43(d)
6 of the Lanham Act and the Anti-Cyber Squatting Protection Act, 15 U.S.C. § 1125(d) (Count
7 Three) (*Id.* at 11-12, ¶¶ 18-22). For relief, the Vazirani Defendants request the following
8 judicial declarations: (1) that counterclaimants have not infringed counterdefendants'
9 trademark rights or violated § 32 of the Lanham Act, 15 U.S.C. § 1114; (2) that
10 counterdefendants alleged trade dress rights are not protectable; (3) that counterclaimants
11 have not infringed counterdefendants' trademark rights in connection with
12 counterdefendants' alleged trade dress rights and have not violated § 43(a) of the Lanham
13 Act, 15 U.S.C. § 1125 (a); and (4) that counterclaimants have not infringed upon
14 counterdefendants' trademark rights, have not violated § 43(b) of the Lanham Act. and have
15 not violated the Anti-Cyber Squatting Protection Act, 15 U.S.C. § 1125(d). (*Id.* at 12, ¶¶ C-
16 F).

**II.   PLAINTIFFS' MOTION TO DISMISS VAZIRANI DEFENDANTS' COUNTERCLAIMS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED. (Doc. 53).**

19    Plaintiffs seek an order dismissing the Vazirani Defendants' counterclaims for failure
20 to state a claim upon which relief can be granted under Federal Rule of Civil Procedure
21 12(b)(6). Plaintiffs argue that the Vazirani Defendants' counterclaims seeking declaratory
22 relief are inappropriate because they "are redundant of their denials and affirmative defenses"
23 and "ask the Court to decide the same issues as Aviva's first, second, third, and fourth causes
24 of action." (Doc. 53 at 3, 4). In response, the Vazirani Defendants argue that "finding in
25 favor of defendants on plaintiffs' principal claims herein would not necessarily constitute an
26 affirmative declaration on any of the specific items as to which defendants seeks a

1 declaration in their Counterclaims" (Doc. 59 at 3). The Vazirani Defendants also argue that
2 their counterclaims "may become important for defendants' protection if plaintiffs seek to
3 dismiss one or more of their principal claims." (*Id.*).

### A. Legal Standard & Analysis

"The Declaratory Judgment Act provides courts with discretion to either grant or dismiss a counterclaim for declaratory judgment." *Southwest Windpower, Inc. v. Imperial Electric, Inc.*, No. CV-10-8200-SMM, 2011 WL 486089 (D. Ariz. Feb. 4, 2011). There is a split among district courts in the Ninth Circuit as to how to handle counterclaims for declaratory relief if such claims are repetitious of issues already before the court via the complaint or affirmative defenses. *See id.* (citing cases that dismiss such counterclaims); 6 CHARLES ALAN WRIGHT, ET. AL., FEDERAL PRACTICE AND PROCEDURE § 1406 (3d ed. 2011) (discussing the split among courts and citing cases). Some courts have concluded that Federal Rule of Civil Procedure 41(a)[4] "contains sufficient protection for defendant against plaintiff's withdrawal and therefore a counterclaim for a declaratory judgment involving the same transaction as plaintiff's claim is wholly redundant and does not serve any useful purpose." 6 CHARLES ALAN WRIGHT, ET. AL., FEDERAL PRACTICE AND PROCEDURE § 1406 (3d ed. 2011). However, this conclusion has not been widely accepted because it "ignores the possibility that it is very difficult to determine whether the declaratory judgment counterclaim really is redundant prior to trial." *Id.*

It appears that all of the Vazirani Defendants' requests for declaratory judgment would be resolved upon the Court's determination of the issues contained in the Complaint and the affirmative defenses. However, the Vazirani Defendants have met the 12(b)(6) standard of stating a claim upon which relief can be granted. The Vazirani Defendants assert

---

[4] Federal Rule of Civil Procedure 41(a) provides, "the plaintiff may dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." FED. R. CIV. P. 41(a)(1)(A)(i)(ii). Otherwise, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." *Id.* at 41(a)(1)(B).

- 6 -

1  that the relief they request will not be duplicative of the issues before the Court and
2  Plaintiffs' assertion that allowing the counterclaims to proceed will expand discovery bolsters
3  the Vazirani Defendants' argument that its counterclaims are somehow different than the
4  issues raised in the complaint and affirmative defenses. *See* Doc. 62 at 2-3. ("In opposition
5  to Plaintiffs' motion, the Vazirani Defendants suggest that this Court should delay dismissal
6  until after the Parties—and this Court—have spent substantial time and resources in
7  discovery and motion practice."). Accordingly, the Court finds that the safest course is to
8  deny the motion to dismiss the counterclaim. *See* 6 CHARLES ALAN WRIGHT, ET. AL.,
9  FEDERAL PRACTICE AND PROCEDURE § 1406 (3d ed. 2011) ("the safer course for the court to
10 follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no
11 doubt that it will be rendered moot by the adjudication of the main action.").

12 Perhaps Plaintiffs did not intend to imply that allowing the counterclaims to go
13 forward would require more discovery than would already be necessary, but, at this stage,
14 the Court finds that the best course is to deny Plaintiffs' Motion to Dismiss the Vazirani
15 Defendants' Counterclaims without prejudice. Plaintiffs may re-raise this issue on summary
16 judgment if the evidence supports their original arguments.

**III.   PLAINTIFFS' MOTION FOR ENTRY OF PARTIAL FINAL JUDGMENT ON LIABILITY AS SANCTIONS FOR SPOLIATION OF EVIDENCE. (Doc. 66).**

19 Plaintiffs argue that they are entitled to sanctions due to Defendant Vazirani's and
20 Defendant Regan's alleged spoliation of evidence. Plaintiffs argue that Defendants' actions
21 entitle them to a determination of liability, leaving their remedies as the only remaining
22 issues for discovery, dispositive motions, and trial.

### A.   Evidence of Spoliation

24 Plaintiffs argue that Defendants Vazirani and Regan have both perjured themselves
25 and destroyed evidence. Plaintiffs argue that the following facts show that Defendants
26 Vazirani and Regan have destroyed or failed to preserve evidence relevant to this litigation:
27 •   Although Plaintiffs have obtained numerous emails and text messages relevant to the litigation from third-parties Eric Starkman and his firm, Starkman & Associates, Inc.
28     (collectively "Starkman"), neither Vazirani or Regan has produced any of these

emails or texts in response to discovery requests, even though the emails and texts show that they were either senders or recipients of the emails and texts. (Doc. 66 at 3, 4).

- Before the emails and texts were produced in this litigation, Defendant Regan's deposition was taken in another lawsuit. During that deposition, Defendant Regan swore he never discussed anti-Aviva websites with Starkman, that he never sent anti-Aviva documents to Starkman, that the first time he saw the emails posted on the alleged infringing websites was when he looked at those websites, that he first learned that Defendant Vazirani had surreptitiously recorded Aviva employee, Jordan Canfield, when he heard the recording on the websites and that he didn't know of Greg Lowney doing any work for Defendant Vazirani besides work in 2011 relating to a virus on Defendant Vazirani's computer. (Doc. 66 at 9, Exhibit 32). Each of these assertions was disproved by Starkman's document production. (*Id.* at 10 (citing exhibits)).[5]

- The emails and texts that were produced by Starkman indicate that Defendant Regan sometimes avoided email in favor of telephone, fax, and text communications to hide what was being discussed. (*Id.* at 11 (citing exhibits)).

- On February 24, 2011, the same day that Plaintiffs filed their Complaint, Defendant Regan sent an email to Starkman and Associates requesting that they "remove all indication of dates for updates on the site." (Doc. 66 at Exhibit 59).

- Defendant Regan produced screenshots of searches of keywords in his google email account to demonstrate that he did not have any emails that he was not producing in response to the subpoenas. However, many of the screenshots actually demonstrated that emails containing the keywords were placed in the "trash" folder of Defendant Regan's email account. (*See* Doc. 66 at Exhibit 75 (At the bottom of screenshots depicting the search results to some "keywords," a message read, "Deleted messages match your search **View them**[6] or go to **Trash** to delete forever.")).

- Both Defendant Vazirani and Greg Lowney, an internet computer specialist who worked on Vazirani's computer and was involved in registering domain names for Defendants, displayed significant gaps in their memories during their depositions, although many of the events they were questioned about occurred within the last two years. Defendant Vazirani equivocated throughout his deposition and claimed not even to know his own opinions in answer to various questions.

In response to these allegations, Defendants argue that they have not destroyed

---

[5] Defendant Regan argues that his answers to his deposition only related to one of the Aviva websites and Plaintiffs have misconstrued his answers to make it seem as if he is lying. The Court has read the relevant portions of Defendant Regan's deposition and finds the assertion that Defendant Regan was only referring to one of the websites unconvincing. Further, even if Defendant Regan was only referring to one of the websites, many of his answers are still disproved by the emails produced by Starkman.

[6] The bolded and underlined words are links to the folder containing the emails that matched the keyword searches that were placed in the trash folder.

1 evidence relevant to the case. They further argue that the alleged spoliation does not hamper 2 Plaintiffs' ability to prosecute their case because they have the emails and texts that were 3 allegedly destroyed.[7] The Vazirani Defendants further argue that because Defendant 4 Vazirani admits to being involved in creating at least one of the websites, Plaintiffs have 5 enough information to prosecute this case. The Vazirani Defendants finally argue that, if the 6 Court believes Vazirani engaged in wrongdoing, an appropriate sanction would be a ruling 7 that Defendant Vazirani is responsible for the anti-Aviva messages on the websites on which 8 Defendant Vazirani disputes ownership.

### B.     Legal Standard and Analysis

The Court has discretion under its inherent powers to sanction a party who causes the spoliation of evidence. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006). This discretion is broad and can range from minor sanctions, such as the awarding of attorneys' fees, *Leon*, 464 F.3d at 961, to more serious sanctions, such as dismissal of claims, *Id.* at 958, or instructing the jury that it may draw an adverse inference, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 386-387 (9th Cir. 2010). Sanctions under these "inherent powers must be exercised with restraint" and should be appropriate to the conduct that triggered the sanction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

Destruction of evidence or the failure to preserve property for another's use as evidence in pending litigation constitutes spoliation. *See United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002). Specifically, failure to "preserve electronic or other records, once the duty to do so has been triggered, raises the issue of spoliation of evidence and its consequences." *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d. 997, 1005 (D. Ariz. 2011) (quoting *Thompson v. U.S. Dep't. of Hous. & Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003)); *see also Leon*, 464 F.3d at 959 (noting willful destruction of electronic files constituted spoliation).

---

[7] Plaintiffs respond that they were only able to obtain *some* of the destroyed emails from Starkman.

- 9 -

"A party seeking sanctions for spoliation of evidence must prove the following elements: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence[.]" *Surowiec*, 790 F.Supp.2d at 1005 (quoting *Goodman v. Praxair Servs., Inc.*, 632 F.Supp.2d 494, 509 (D. Md. 2009)). The Court will now examine each of these elements to determine if Plaintiffs have sufficiently established that Defendants Regan and Vazirani engaged in conduct that led to the spoliation of evidence and warrants sanctions.

### i. Obligation to Preserve

"It is well established that the duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation." *Id.* (internal citation and quotation omitted). "Stated differently, the duty to preserve is triggered not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.* (internal citations omitted). At the very latest, Defendant Vazirani's duty to preserve his computer's hard drive and electronic data arose when he was served with Plaintiffs' Complaint on February 25, 2011. Although Defendant Regan was not named as a Defendant in the original Complaint, at the very latest, his duty to preserve evidence arose on April 4, 2011 when he received a subpoena in this matter.

From the facts presented, it appears that Defendants Vazirani and Regan have engaged in a pattern of hiding and/or failing to preserve relevant evidence. For instance, Defendant Regan ordered a Starkman employee to delete information from one of the websites that is the subject of this lawsuit the day the Complaint was filed. Although Defendant Regan was not then a party to this action, the totality of the facts presented suggest that Defendants worked together with third parties to destroy and/or hide evidence. It would be a perversion of justice to allow Defendants to claim they are not personally responsible for the destruction of relevant evidence when third parties were acting at their behest. Accordingly, Plaintiffs

have made a showing that at least some of the spoliation occurred after Defendants' duty to preserve had arisen.

### ii. Culpable State of Mind

"Courts have not been uniform in defining the level of culpability—be it negligence, gross negligence, willfulness, or bad faith—that is required before sanctions are appropriate." *Id.* at 1006 (internal quotation and citation omitted). "Nor is there consensus as to how the level of culpability is to be determined, or what prejudice, if any, may be presumed from culpable conduct." *Id.* at 1006-1007. However, it is clear that "[a]n allegedly spoliating party's culpability must be determined case-by-case." *Id.* at 1007.

In this case, Defendants have provided no reasonable explanation for their failure to preserve. The totality of the facts presented shows that Defendants Regan and Vazirani deleted relevant records relating to this lawsuit. Further, the evidence suggests that as the lawsuit progressed, Defendants began communicating through telephone and faxes to avoid creating a record through email and text messaging technology that could later be discovered through forensic imaging. Moreover, although it appears from the evidence that Defendant Vazirani and Greg Lowney have significant knowledge that would be responsive to questions asked during their depositions, both displayed significant, unexplained gaps in memory regarding the events related to this lawsuit during those depositions. Finally, the evidence shows that Defendant Regan lied in his deposition about the events relating to this lawsuit. Accordingly, the Court finds that Defendants acted in bad faith and, thus, with a culpable state of mind.

### iii. Relevance to the Claims

Plaintiffs have shown that the evidence destroyed was likely relevant to their claims. Starkman produced numerous emails that were also sent to Defendants Regan and Vazirani. Defendants Regan and Vazirani did not produce any of these emails. Further, the screenshots of Defendant Regan's email account show that information related to the relevant "keyword" searches were placed in the trash folder of his email and never produced. Accordingly, the Court finds that Defendants destroyed and/or hid information relevant to this case.

### iv. Appropriate Sanction

Plaintiffs argue that Defendants' actions entitle them to a determination of liability, leaving Aviva's remedies as the only remaining issues for discovery, dispositive motions, and trial. In the alternative, Plaintiffs request a determination that Aviva has established a prima facie case on each of its claims, thereby shifting the burden of proof on liability on each of those claims to Defendants, or a ruling that Aviva is entitled to adverse inference instructions on each element of each of its claims in this case. Aviva also requests an award of attorneys' fees and costs incurred in connection with seeking the spoliated evidence and incurred in connection with this motion. The Court "must determine which sanction best (1) deters parties from future spoliation, (2) places the risk of an erroneous judgment on the spoliating party, and (3) restores the innocent party to their rightful litigation position." *Id.* at 1008 (internal quotation and citation omitted).

There is a five-part test to determine whether a sanction determining liability in favor of one party is just: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 788 (9th Cir. 2011) (internal citation omitted).

The first two factors favor judgment for Plaintiffs on liability. Because the Court and the public have a strong interest in judicial efficiency and the prompt resolution of litigation, Defendants' failure to preserve evidence, and the resulting delay caused by discovery disputes and the instant motion for sanctions, weigh in favor of judgment for Plaintiffs on liability. *See Surowiec*, 790 F.Supp.2d at 1009. Nonetheless, the Court finds that the final three factors weigh against a liability-determining sanction. The third factor, prejudice, "looks to whether the spoliating party's actions impaired the non-spoliating party's ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (citation and brackets omitted). While it is apparent that Plaintiffs have been prejudiced by the spoliation, the Court finds that a lesser sanction would correct any

interference with a rightful decision of the case attributed to the spoliation. *See id.* (quoting *Rimkus Consulting Group, Inc.v. Cammarata*, 688 F.Supp.2d at 618 (S.D. Tex. 2010)) ("When a party is prejudiced, but not irreparably, from the loss of evidence that was destroyed with a high degree of culpability, a harsh, but less extreme sanction than dismissal or default is to permit the fact finder to presume that the destroyed evidence was prejudicial."). Accordingly, the Court finds that a sanction granting judgment for Plaintiffs on liability would be inappropriate in this case.

Plaintiffs have requested alternative sanctions of a determination that Aviva has established a prima facie case on each of its claims, thereby shifting the burden of proof on liability on each of those claims to Defendants or a ruling that Aviva is entitled to adverse inference instructions on each element of each of its claims in this case. The Court finds adverse inference instructions to be warranted to the extent Defendants' spoliation affects Plaintiffs' ability to prove their claims. The Parties shall submit proposed adverse inference instructions with the other jury instructions to be filed before trial.

If Plaintiffs believe that Defendants' spoliation affects their ability to dispute summary judgment, Plaintiffs may propose an appropriate adverse inference in response to any motion for summary judgment.[8] If Plaintiffs propose inferences in response to a summary judgment motion, they must specify how Defendants' spoliation has prevented them from disputing specific facts, the discovery they have undertaken to obtain those facts, and how an inference in their favor would prevent summary judgment as a matter of law.

Accordingly, Plaintiffs' Motion for Entry of Partial Final Judgment on Liability as Sanctions for Spoliation of Evidence is denied with respect to judgment for Plaintiffs on liability, but granted as to the request for adverse inference instructions.

### C. Attorneys' Fees

---

[8] The Court is aware that Defendants have already moved for summary judgment on Plaintiffs' Rico cause of action. Accordingly, the Court will strike Plaintiffs' Response and Defendants' Reply in Support of that motion to give Plaintiffs the opportunity to respond in accordance with this Order.

- 13 -

Plaintiffs also request an award of attorneys' fees and costs incurred in connection with seeking the spoliated evidence and incurred in connection with this motion. "Under its 'inherent powers,' a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 961 (internal quotation and citation omitted). "Before awarding such sanctions, the court must make an express finding that the sanctioned party's behavior constituted or was tantamount to bad faith." *Id.* (citation omitted). "A party demonstrates bad faith by delaying or disrupting the litigation or hampering enforcement of a court order." *Id.* (internal citation omitted). "The bad faith requirement ensures that the district court's exercise of its broad power is properly restrained, and preserves a balance between protecting the court's integrity and encouraging meritorious arguments." *Id.* (internal quotation and citation omitted). "Additionally, the amount of monetary sanctions must be reasonable." *Id.* (internal quotation and citation omitted). The Court has already found that Defendants Regan and Vazirani acted in bad faith. Accordingly, Plaintiffs are entitled to their *reasonable* attorneys' fees incurred in connection with this motion and seeking spoliated evidence.

The Parties are directed to confer in good faith to resolve any disputes concerning the amount of *reasonable* expenses and fees. *See* LRCiv 54.2(d)(1). If the Parties are unable to agree, Plaintiffs may file a motion pursuant to Local Rule 54.2. Any such motion shall be filed, with a supporting memorandum, on or before February 6, 2012, with the response and reply briefs due in accordance with the time periods provided in Local Rule 54.2(b)(3) and (4).

### IV. DEFENDANT JAMES REGAN'S MOTION FOR SANCTIONS FOR DISCOVERY ABUSE (Doc. 73).

Defendant Regan alleges that, in response to discovery requests by Aviva, he allowed Aviva's computer expert to attempt to obtain discoverable information from the hard drive of his computer. Defendant Regan alleges that, when Aviva's computer expert returned his computer to him, it was severely damaged and he had to replace it. Defendant Regan further

1  alleges that he has submitted his $900 bill for the damage to his computer to Aviva and
2  Aviva has refused to pay it. Defendant Regan "asks that the Court award him an
3  immediately payable sanction of $900 to pay for the computer destroyed by Aviva's
4  computer 'expert.'" (Doc. 73 at 10). In their Response to the request for sanctions,
5  Plaintiffs argue that their expert did not damage Defendant Regan's computer. (Doc. 81).

6  This is not the type of situation where a sanction would be appropriate or warranted.
7  The substance of Defendant Regan's motion convinces the Court that he is not seeking a
8  sanction for an abuse of discovery, but is seeking a sanction for damage to property that
9  allegedly occurred during the discovery process. These two situations are not equivalent.
10 For example, if Plaintiffs' expert intentionally destroyed evidence relevant to the case, at
11 Plaintiffs' direction or to assist Plaintiffs in obstructing the discovery process, a sanction for
12 abuse of discovery would be appropriate. Conversely, if Plaintiffs' expert and Defendant
13 were involved in a car accident in the parking lot of the law firm where Defendant's
14 deposition was to take place, this Court could not order Plaintiffs (or their expert) to pay for
15 the damage to Defendant's car as a sanction for abuse of the discovery process. The conduct
16 at issue here is akin to the latter example.

17 Further, the alleged damage is not attributable to Plaintiffs, but to their expert.
18 Defendant Regan may have a separate cause of action against Plaintiffs' expert for the
19 damage done to his computer, but the Court does not have jurisdiction within this case over
20 a claim between Defendant Regan and a third-party involving issues and facts distinct from
21 the issues and facts necessary to the resolution of the dispute in this case. Accordingly,
22 Defendant Regan's Motion for Sanctions for Discovery Abuse is denied.

23 Based on the foregoing,

24 **IT IS ORDERED** that Plaintiffs' Motion to Dismiss the Vazirani Defendants'
25 Counterclaims (Doc. 53) is denied without prejudice. Plaintiffs may re-raise this issue on
26 summary judgment if the evidence supports their original arguments.

27 **IT IS FURTHER ORDERED** that Plaintiffs' Motion for Entry of Partial Final
28 Judgment on Liability as Sanctions for Spoliation of Evidence (Doc. 66) is granted in part

Case 2:11-cv-00369-JAT   Document 101   Filed 01/10/12   Page 16 of 16

and denied in part as set forth in this Order. As set forth in this Order, Plaintiffs must file any reasonable request for attorneys' fees before February 6, 2012.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall strike Plaintiffs' Response to Vazirani Defendants' Motion for Judgment on the Pleadings (Doc. 84) and the Vazirani Defendants Reply Memorandum in Support of Motion for Judgment on the Pleadings on Plaintiffs' RICO Cause of Action (Doc. 87). Plaintiffs shall file their Response within fourteen days of the date of this Order. If Plaintiffs do not wish to make changes to their Response, Plaintiffs may re-file their current response. Defendants shall file their Reply within seven days of Plaintiffs' Response.

**IT IS FINALLY ORDERED** that Defendant Regan's Motion for Sanctions for Discovery Abuse (Doc. 73) is denied.

DATED this 10th day of January, 2012.

*/s/ James A. Teilborg*
James A. Teilborg
United States District Judge

- 16 -