**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aviva USA Corporation, an Iowa corporation; and Aviva Brands Limited, a United Kingdom limited company,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>Anil Vazirani, an individual; Vazirani & Associates Financial, LLC, an Arizona limited liability company; Secured Financial Solutions, LLC, an Arizona limited liability company; James Regan, an individual; and Regan & Associates, LLC, an Arizona Limited liability Company<br><br>　　　　Defendants.<br><br>Anil Vazirani, an individual; Vazirani & Associates Financial, LLC, an Arizona limited liability company; and Secured Financial Solutions, LLC, an Arizona limited liability company,<br><br>　　　　Counterclaimants,<br><br>Aviva USA Corporation, an Iowa corporation; and Aviva Brands Limited, a United Kingdom limited company,<br><br>　　　　Counterdefendants. | No. CV 11-0369-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Defendants Anil Vazirani, Vazirani & Associates Financial, LLC, and Secured Financial Solutions, LLC's Motion for Judgment on the

Pleadings on Plaintiffs' RICO Cause of Action (Doc. 74). The Court now rules on the Motion.

## I. BACKGROUND

Plaintiffs Aviva USA Corporation and Aviva Brands Limited (collectively "Aviva") filed an amended complaint (Doc. 42) against Defendants Anil Vazirani, Vazirani & Associates Financial LLC, Secured Financial Solutions, LLC (collectively the "Vazirani Defendants"), James Regan, and Regan and Associates, LLC (collectively the "Regan Defendants"). Aviva is one of the largest insurance companies in the world and serves customers in the life insurance and annuity sector. Though the Vazirani Defendants at one time had a commercial relationship with Aviva, that relationship has been terminated. The Vazirani Defendants currently offer products and services that purportedly compete with products and services offered by Aviva. Further, the Vazirani Defendants, with the assistance of the Regan Defendants, are allegedly involved in "a campaign against Aviva of cyber-terrorism, racketeering, and extortion." (Doc. 42 at ¶ 9).

Specifically, Plaintiffs allege that, in July 2010, Defendant Vazirani's lawyer emailed Aviva claiming that Defendants would hire a public relations firm to launch an internet smear campaign if Aviva did not pay Defendant Vazirani off. (*Id.* at ¶ 20). Plaintiffs allege that when Aviva did not pay, Defendants hired Eric Starkman and his public relations firm, Starkman & Associates, Inc., to develop a commercial website that infringed Aviva's trademark and trade dress rights and disparaged Aviva. (*Id.* at ¶ 21). Plaintiffs allege that Defendants then made the website available to the public at various domain names, including insideaviva.com, aviva-exposed.com, avivauncovered.com (collectively the "Tranche 1 Domain Names"), and aviva-uncovered.com (the "Tranche 2 Domain Name"). (*Id.* at ¶¶ 31-34). Plaintiffs further allege that Defendants registered these domain names fraudulently by providing false information and false names. (*Id.* at ¶¶ 39-55).

The Defendants then allegedly continued their campaign against Aviva by sending out "blast emails" to Aviva's agents, potential agents, and consumers. (*Id.* at 11, ¶ 56). The emails both disparaged Aviva and directed the recipients to Defendants' websites. (*Id.*).

1  Furthermore, the Defendants continued to modify the website after this lawsuit was filed and
2  increased the number of domain names associated with the website from four to fourteen.
3  (*Id.* at ¶¶ 58-59). These additional websites included aviva-lawsuit.com (the "Tranche 3
4  Domain Name") and avivacomplaints.com, avivaplcsucks.com, avivasucksusa.com,
5  anilvaziranivsaviva.com, anilvsaviva.com, avivavsanilvazirani.com, avivavsanil.com, aviva-
6  problems.com, and aviva-litigation.com (collectively the "Tranche 4 Domain Names"). (*Id.*
7  at 60-61).

8       In Count Five of the amended complaint, Plaintiffs allege that Defendants, through
9  these activities, have engaged in federal racketeering in violation of the Racketeer Influenced
10 and Corrupt Organizations Act ("RICO"). (*Id.* at ¶¶ 134-42). Defendants have moved for
11 judgment on the pleadings on Plaintiffs' RICO claim.

12 **II.    LEGAL STANDARD**
13     **A.    Judgment on the Pleadings**

14      A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c)
15 "is properly granted when there is no issue of material fact in dispute, and the moving party
16 is entitled to judgment as a matter of law." *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir.
17 2009). When considering a Rule 12(c) motion, a court "must accept all factual allegations
18 in the complaint as true and construe them in the light most favorable to the non-moving
19 party." *Id.* Further, because the standard for dismissal is "functionally identical" to the
20 standard under Rule 12(b)(6), *United States ex rel. Caffasso v. Gen. Dynamics C4 Systs.,*
21 *Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011), a court must "inquire whether the complaint's
22 factual allegations, together with all reasonable inferences, state a plausible claim for relief."
23 *Id.* at 1054 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-80, 129 S. Ct. 1937, 1949-50 (2009)).
24 In other words, dismissal pursuant to Rule 12(c) is inappropriate in circumstances in which,
25 if the facts were as pleaded, they would entitle the plaintiff to a remedy. *Merchants Home*
26 *Delivery Serv., Inc. v. Hall & Co.*, 50 F.3d 1486, 1488 (9th Cir.1995).

27     **B.    Elements of a RICO Claim**
28      The Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. §§ 1961 *et seq.*, provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Section 1962(c) of RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Thus, to state a claim under section 1962(c), "a plaintiff must allege (1) conduct, (2) of an enterprise, (3) through a pattern, and (4) of racketeering activity." *Jarvis v. Regan*, 833 F.2d 149, 151-52 (9th Cir. 1987) (internal citations omitted).

## III.  ANALYSIS

### A.  Plaintiffs' Amended Complaint Does Not Sufficiently Allege a Pattern of Racketeering Activity

Section 1961 of RICO defines "racketeering activity" by reference to a list of specific crimes and statutes. 18 U.S.C. § 1961(1). That section further states that a "'pattern of racketeering activity' requires at least two acts of racketeering activity" within a 10-year period. 18 U.S.C. § 1961(5). The acts must be related and also must amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Furthermore, with regard to continued criminal activity, "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241. Thus, because "Congress was concerned in RICO with long-term criminal conduct," "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement." *Id.* at 242.

Moreover, the Ninth Circuit has held that allegations of one scheme, perpetrated against a single victim, are typically insufficient to establish a pattern for civil RICO purposes. *See Sever v. Alaska Pulp Co.*, 978 F.2d 1529, 1535 (9th Cir. 1992) (affirming dismissal of RICO claims where "although [plaintiff] alleges a number of 'acts,' [defendant's] collective conduct is in a sense a single episode having the singular purpose

1  of impoverishing [plaintiff], rather than a series of separate, related acts," and pointing to the
2  importance of the fact that "there was but a single victim involved"); *Jarvis v. Regan*, 833
3  F.2d 149, 153-54 (9th Cir. 1987) (affirming dismissal of a RICO claim where the alleged
4  pattern consisted of three acts of mail and wire fraud committed by legal aid organizations
5  in obtaining a single federal grant); *Schreiber Distrib. Co. v. Serv Well Furniture Co.*, 806
6  F.2d 1393, 1399 (9th Cir. 1986) (affirming dismissal of RICO claims where alleged pattern
7  consisted of fraudulently obtaining a single shipment of goods). Additionally, "[a]ctivity that
8  lasts only a few months is not sufficiently continuous." *Howard v. Am. Online Inc.*, 208 F.3d
9  741, 750 (9th Cir. 2000). And though there is no bright-line rule, *see Allwaste, Inc. v. Hecht*,
10 65 F.3d 1523, 1528 (9th Cir. 1995), the Ninth Circuit has previously noted an absence of
11 cases finding continuity where all of the alleged predicate acts occurred within a year. *See*
12 *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 366-67 (9th Cir. 1992) (collecting cases).

13 Here, the alleged pattern of racketeering activity in Plaintiffs' amended complaint
14 includes eight "counts" of extortion, two "counts" of wire fraud, and two "counts" of
15 forgery.[1] Plaintiffs' allegations can be broken down as follows:

- On July 28, 2010, Defendants "issued an email threat to Aviva and various of its associates that the Syndicate[2] would hire a public relations firm to launch an Internet smear campaign if Aviva did not pay Vazirani off." ("Extortion Count 1," Doc. 42, ¶ 20).

- On various dates in November 2010, Defendants "followed through with [their] extortionate demand" by hiring a public relations firm to develop a website that disparaged Aviva and infringed its intellectual property. ("Extortion Count 2," Doc. 42, ¶¶ 21-30).

- In January and early February of 2011, Defendants published their

---

[1] Despite grouping the wire fraud and forgery allegations into two "counts" for each in their amended complaint, Plaintiffs refer in their response to four acts of wire fraud and three acts of forgery, apparently associating each act with a distinct domain name rather than with a "tranche" of domain names. (Doc. 84, at 7 n.1). Nevertheless, because both of Plaintiffs' methods of grouping the allegations refer to identical actions by Defendants, the Court's analysis applies equally under either method.

[2] In the amended complaint, Plaintiffs refer to Defendants as the "Vazirani Syndicate" or the "Syndicate." Doc. 42, ¶ 1.

- 5 -

website at various domain names ("Tranche 1 Domain Names"). Defendants subsequently de-published the website from those domain names and republished the website at the "Tranche 2 Domain Name." ("Extortion Counts 3 and 4," Doc. 42, ¶¶ 31-38).

- Defendants allegedly registered the Tranche 1 Domain Names using false registration information, including the false name "Will Moneymaker." ("Forgery Count 1" and "Wire Fraud Count 1," Doc. 42, ¶¶ 39-45).

- Defendants allegedly also registered the Tranche 2 Domain Name using false registration information, including the false name "Jim Jenson." ("Forgery Count 2" and "Wire Fraud Count 2," Doc. 42, ¶¶ 46-55).

- In or around February 2011, Defendants launched a "campaign of blast emails" that disparaged Aviva and was directed at its agents, potential agents, and consumers. ("Extortion Count 5," Doc. 42, ¶¶ 56-57).

- After this lawsuit was filed, Defendants modified the disparaging website on multiple occasions by both adding commercially harmful material and removing aspects of Aviva's trade dress. ("Extortion Count 6," Doc. 42, ¶ 58).

- Also after this lawsuit was filed, Defendants registered additional domain names for publishing its website, including the "Tranche 3 Domain Names" on April 18, 2011 and the "Tranche 4 Domain Names" on April 28, 2011. ("Extortion Counts 7 and 8," Doc. 42, ¶¶ 59-63).

Despite Plaintiffs attempts to carefully distinguish each of these "counts," the Court views them merely as part of a single alleged extortion scheme, or in Plaintiffs' words, a single extortionate "Internet smear campaign" against Aviva. That is, after the initial alleged extortionate demand, the remaining "counts" are simply evidence of Defendants' efforts to "follow through with their extortionate demand." (Doc. 42, at ¶ 21). Furthermore, while this single alleged predicate act of extortion is not sufficient to establish a pattern of racketeering activity under RICO, *see* 18 U.S.C. § 1961(5), Plaintiffs have also failed to allege such a pattern when the additional alleged predicate acts of wire fraud and forgery are considered. Particularly, Plaintiffs have failed to allege acts that meet RICO's continuity requirement for establishing a pattern of racketeering activity. *See H.J. Inc.*, 492 U.S. at 239.

**1. Plaintiffs have alleged a single act of extortion**

The Hobbs Act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under

1 the color of official right." 18 U.S.C. § 1951(b)(2).[3]  "'Fear' in this context has been held
2 to include fear of economic loss." *United States v. Greger*, 716 F.2d 1275, 1278 (9th Cir.
3 1983). Further, it is a violation of the Hobbs Act to obstruct, delay, or affect commerce or
4 the movement of any article or commodity in commerce by extortion, attempted extortion,
5 or conspiracy to commit extortion. 18 U.S.C. § 1951(a).

6 Here, Plaintiffs allege in "Extortion Count 1" that Defendants sent a single email
7 demand for a "pay off" and threatened a single, economically harmful "Internet smear
8 campaign" to induce Plaintiffs to consent to "pay off" Defendants. Construing these
9 allegations in a light most favorable to Plaintiffs, Plaintiffs have properly alleged attempted
10 extortion under the Hobbs Act. However, they have alleged only a single instance of
11 attempted extortion. The additional "counts" of extortion in the amended complaint,
12 including developing, publishing, and modifying the website, registering and changing the
13 domain names, and sending emails directing third parties to the website, are insufficient to
14 constitute additional violations of the Hobbs Act because the alleged acts in those counts
15 merely reflect Defendants following through on the initial extortionate demand. As Plaintiffs
16 stated in their response, "the Vazirani Defendants have registered a series of fourteen domain

---

[3]Plaintiffs also allege that Extortion Counts 1-8 constitute extortion under A.R.S. § 13-804(A)(6), which states, in part, that "[a] person commits theft by extortion by knowingly obtaining or seeking to obtain property or services by means of a threat to . . . in the future . . . [e]xpose a secret or an asserted fact, whether true or false, tending to . . . impair the person's credit or business." However, in *State v. Weinstein*, the Arizona Court of Appeals held that language to be unconstitutionally overbroad. 898 P.2d 513, 517 (Ariz. Ct. App. 1995). Though the Arizona legislature subsequently amended section 13-1804, that amendment did not address the problematic language identified in *Weinstein*. Therefore, section 13-1804(A)(6) remains unconstitutionally overbroad, and thus does not provide a basis on which Defendants' alleged extortion could be "chargeable under state law" for purposes of section 1961(1) of RICO. *See Weinstein*, 898 P.2d at 517 (affirming dismissal of extortion charge); *Rolle v. Law Office of Samuel Streeter, PLLC*, No. CIV 08-274-TUC-CKJ, 2010 WL 729022, at *6 (D. Ariz. March 2, 2010) (discussing *Weinstein* and finding that the plaintiff could not recover on claim stated under section 13-1804(A)(6)). Nevertheless, even putting aside the unconstitutionality of section 13-1804(A)(6), the Court's analysis in this Order would apply equally to Plaintiff's extortion claims under state law.

names and websites . . . to *make good* on their threat to launch a smear campaign against Aviva to extort Aviva into paying them off, restoring Vazirani's business relationship with Aviva, and to unfairly compete with Aviva." (Doc. 84, at 1) (emphasis added); *see also McLaughlin v. Anderson*, 962 F.2d 187, 194 (2d Cir. 1992) (finding several acts following alleged extortion demand did not meet the Hobbs Act definition of extortion because they were, at best, examples of the defendant "making good" on his initial threat). There is no indication of any additional extortionate demands or threats associated with those additional "counts" that might give rise to an additional Hobbs Act violation. Plaintiffs have therefore alleged only a single predicate act of extortion.

### 2. Plaintiffs have failed to meet RICO's continuity requirement

Even assuming here that the alleged acts of wire fraud and forgery constitute distinct predicate acts for purposes of RICO,[4, 5] those acts combined with the predicate act of

---

[4] Though wire fraud clearly is one of the enumerated predicate acts in section 1961(1), that section only specifically references forgery with respect to forgery of a passport. *See* 18 U.S.C. § 1961(1). Plaintiffs argue in their Response that "Forgery Counts 1 and 2" are predicate acts under section 1961(1)(A) because they "involve extortion." Plaintiffs further cite to *Ticor Title Ins. Co. v. Florida*, wherein the Ninth Circuit held that three separate acts of forgery were sufficient to establish a pattern of racketeering activity under RICO. 937 F.2d 447, 450-51 (9th Cir. 1991). The *Ticor Title* court, however, did not explain how those acts of forgery met the definition of "racketeering activity" in section 1961(1). Moreover, other courts have held that general forgery is not a predicate act under that section. *See, e.g.*, *Morelli v. Morelli*, No. CIV. A. 93-5619, 1994 WL 327640, at *2 (E.D. Pa. July 7, 1994) ("[F]orgery . . . do[es] not qualify as [a] predicate act[] under RICO."); *Henry v. Farmer City State Bank*, No. 85-3365, 1985 WL 25627, at *2 (C.D. Ill. Dec. 17, 1985) ("[F]orgery alone is not a predicate act under § 1961(1)."). Nevertheless, because this Court finds that Plaintiffs have failed to establish a pattern of racketeering activity whether or not the alleged acts of forgery are properly included as predicate acts, the Court need not decide that specific issue.

[5] Defendants also argue that Plaintiffs' have not met RICO's standing requirement with regard to the alleged acts of wire fraud and forgery because those acts did not directly injure Plaintiffs. Thus, Defendants argue, those alleged acts do not properly constitute predicate acts under RICO. Indeed, the U.S. Supreme Court has interpreted the "by reason of" language in section 1964(c) to imply a causation standing requirement for civil RICO actions. *See Hemi Grp., LLC v. City of New* York, 130 S. Ct. 983, 989 (2010) ("[T]o state

- 8 -

extortion described above do not sufficiently establish a pattern of racketeering activity. Rather, this "collective conduct is in a sense a single episode having [a] singular purpose." *Sever*, 978 F.2d at 1535. That is, both the alleged wire fraud and forgery were simply steps taken to further the Defendant's single alleged extortion scheme, which it targeted only at Plaintiffs. Moreover, the fact that all of the alleged predicate acts here occurred within less than a year further undermines a finding of closed-ended continuity. *See, e.g.*, *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1418 (9th Cir. 1991) ("[A]n eight-month period of fraudulent activity directed at a single entity does not constitute a pattern, absent a threat of future criminal acts.").

With regard to a threat of future criminal conduct, the acts alleged in the amended complaint are clearly all "designed to bring about a single event"–the "paying off" of Defendants.[6] *See Sever*, 978 F.2d at 1535-36. There is no suggestion of other potential victims or that Defendants will continue to commit acts of extortion, wire fraud, or forgery against Plaintiffs once the alleged objective is completed. In other words, there is no indication that the alleged "racketeering acts themselves include a specific threat of repetition extending indefinitely into the future," which would "supply the requisite threat of continuity." *See H.J. Inc.*, 492 U.S. at 242.

---

a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense not only was a 'but for' cause of his injury, but was the proximate cause as well." (internal quotation omitted)). However, the Court finds that the alleged acts of extortion, forgery, and wire fraud do not constitute a pattern of racketeering activity under RICO even if all of the alleged acts are assumed to be predicate acts under section 1961(1). Moreover, Defendants do not challenge Plaintiffs' standing with regard to the alleged extortion. Thus, the Court need not decide the standing issue with regard to the forgery and wire fraud.

[6]Plaintiffs argue in their Response that Defendants' objectives, in addition to coercing money from Aviva and restoring Vazirani's business relationship with Aviva, was to steal Aviva's goodwill, business, and customers. (Doc. 84, at 7). However, to the extent that this injury relates to Plaintiffs allegations of extortion, it does not constitute a separate extortionate demand or separate extortionate scheme. Rather, as alleged in the amended complaint, it simply reflects the feared, and potentially actual, economic loss on which Defendants' allegedly relied to induce Plaintiffs to "pay off" Defendants.

Further, as the amended complaint itself demonstrates, Defendants' alleged acts of wire fraud and forgery, which related to the Tranche 1 and Tranche 2 Domain Names, were not allegedly repeated with the Tranche 3 and Tranche 4 Domain Names, further indicating that these acts have not "become a regular way of conducting business" for the Defendants.[7] *See Ticor Title*, 937 F.2d at 450. Thus, the alleged acts "[do] not pose a threat of continuity," *see Sever*, 978 F.2d at 1536, and Plaintiffs have failed to allege a pattern of racketeering activity under RICO.

In sum, the Court, accepting the allegations in Plaintiffs' amended complaint as true and construing them in a light most favorable to Plaintiffs, finds that Plaintiffs have not sufficiently alleged a pattern of racketeering activity even if the Court considers the alleged acts of wire fraud and forgery to be valid predicate acts. Defendants therefore are entitled to judgment on the pleadings with respect to Plaintiffs' RICO claim.

**B.  Plaintiffs' Proposed Amendments to the Complaint are Futile**

Plaintiffs alternatively request leave to amend if the Court grants Defendants' Motion, while Defendants argue amendment would be futile. The Court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "Five factors are frequently used to assess the propriety of a motion for leave to amend: (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of amendment; and (5) whether plaintiff has

---

[7] In *Ticor Title*, the Ninth Circuit determined that evidence of two legitimate lien releases obtained subsequent to three forged lien releases did not establish that those defendants "would not continue to forge releases if legitimate attempts to obtain releases were unsuccessful." 937 F.2d at 450-51. Here, however, Plaintiffs have alleged a single extortion scheme directed at a single victim and that only the first four of fourteen domain names allegedly used in that single scheme were registered fraudulently. Further, the amended complaint does not allege a motivation for Defendants' alleged fraudulent registrations, such as any previous failed legitimate attempts. Thus, construing the allegations in a light most favorable to Plaintiffs, this Court can at most conclude that Defendants *might* fraudulently register a fifteenth or subsequent domain name to publish their disparaging message about Aviva. However, based on the allegations in the amended complaint, even that action would merely constitute an additional act in furtherance of the single scheme against a single victim for a singular purpose, and thus could not be construed as Defendants' regular way of conducting business.

- 10 -

previously amended his complaint. *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). "[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *see Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Furthermore, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.* (internal quotation omitted).

As discussed above, the Court has already determined that Plaintiffs' amended complaint does not sufficiently state a RICO claim because it does not properly allege a pattern of racketeering activity under RICO. Thus, any amendments by Plaintiffs, in order to not be futile, would need to overcome this finding. However, none of Plaintiffs' proposed amendments can do so.

Plaintiff's proposed amendments would include the following alleged facts: (1) "Vazirani's and Regan's perjurious testimony and destruction of evidence," which is alleged to be obstruction of justice under 18 U.S.C. § 1503; (2) Defendants' "extortionate efforts to stifle Aviva's business activities," which is alleged to be a violation of 18 U.S.C. § 1951; (3) "Starkman's [interstate travels] to further [Defendants'] scheme," which is alleged to "constitute interstate travel in aid of racketeering;" (4) "Starkman's use of the U.S. mail to transport the electronic copy of the draft website to Vazirani through Regan," which is alleged to constitute "interstate transportation in aid of racketeering;" and (5) Defendants' "wrongful use of Will Moneymaker's identity to register the extortionate websites," which is alleged to violate A.R.S. §§ 13-2004 and 13-2008. (Doc. 84, at 16-17).

The second proposed amendment, that Defendants violated section 1951 through "extortionate efforts to stifle Aviva's business activities," clearly adds nothing to the allegations already contained in the amended complaint. Of the remaining proposed amendments, only the first alleges a violation that is clearly included as a predicate act under RICO. *See* 18 U.S.C. § 1961(1)(B) (listing "section 1503 (relating to obstruction of justice)"). Nevertheless, even assuming that the remaining proposed amendments constitute valid predicate acts for purposes of RICO, they still are not sufficient to constitute a pattern

- 11 -

of racketeering activity when added to the allegations in the amended complaint. Rather, they are all simply part of the same single extortion scheme discussed above. That is, even with the additional alleged conduct, the Defendants' "collective conduct" remains "in a sense a single episode having [a] singular purpose." *Sever*, 978 F.2d at 1535. Plaintiffs' strained efforts to break this single episode of alleged extortion into as many different criminal acts as possible is unavailing. Thus, none of these proposed amendments supplies the closed- or open-ended continuity that was lacking in Plaintiffs' amended complaint. The proposed amendments are therefore futile, and Plaintiffs' request for leave to amend their complaint is denied.

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** granting Defendants' Motion for Judgment on the Pleadings on Plaintiffs' RICO Cause of Action (Doc. 74).

**IT IS FURTHER ORDERED** granting Defendants' Unopposed Motion for a One Day Extension to the Deadline to File Dispositive Motions (Doc. 168). The deadline for the parties to file dispositive motions is extended to Tuesday, May 15, 2012.

DATED this 9th day of May, 2012.

James A. Teilborg
United States District Judge